## HOWARD v. ALBRIGHT.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1909.)

CONTRACTS (§ 295*)—PERFORMANCE—PART PERFORMANCE.

    Plaintiff agreed to build a pipe organ in defendant's house, warranted to be perfect when completed, defendant to prepare the place for the organ, and pay $12,000 therefor. The size and sufficiency of the place where it was built was left to plaintiff's judgment, and was enlarged at his suggestion; defendant having no knowledge of organ building. The organ did not work satisfactorily when completed, and the parties agreed that plaintiff, to remedy the defects, should regulate the stops, etc., revoice the pipes, and put bushings over the keys, whereupon the purchase price was to be paid. The changes were made except the bushing of the keys, which would have cost about $20, but the organ still did not work satisfactorily; it appearing that the real cause of its failure to play properly was the confined space in which it was built. Plaintiff sued and recovered a verdict for the full price, and claims that the second agreement relieved him of responsibility for all defects except those named therein, and that the verdict should not have been set aside for so slight a matter as his failure to put in the bushings. *Held*, in view of plaintiff's narrow construction of the effect of the second agreement, that he cannot complain that he is required to perform the original contract in every particular before recovering.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1353, 1362; Dec. Dig. § 295.*]

Appeal from Trial Term, Erie County.

Action by Emmons Howard against John J. Albright. From an order granting a new trial after verdict for plaintiff, he appealed. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frank Gibbons, for appellant.
Louis L. Babcock, for respondent.

SPRING, J. The defendant in the year 1903 was erecting an expensive fireproof residence on West Ferry street, in the city of Buffalo. The house contained a large music room, and, as it approached completion, the defendant conceived the design of installing a large pipe organ. The plaintiff is an organ builder of large experience, with

a manufactory in Westfield, Mass., and he entered into a brief written agreement with the defendant by which he agreed to "build an organ according to the annexed specifications, of the best material and in the most thorough manner, and deliver it set up in the house in good order, ready for use, warranted perfect in every respect, on or before February 1st, 1904, to be certified to by Mr. Waith," who was an organist of local prominence. The defendant agreed to "prepare the place for an organ, and allow suitable convenience and opportunity in the house for the work of setting it up and tuning it," and pay therefor "upon its completion" the sum of $12,000. The organ was placed in the residence and failed to work as intended, and, for that reason, the defendant refused to pay. On June 10, 1905, the agreement sued upon was made between the parties. Certain specific things were to be performed by the plaintiff for the purpose of remedying the existing defects in order that the instrument might work satisfactorily. He was to "place each and all of the stops, and particularly the 8 foot stops, in said organ in good condition, eradicating all weakness in the trebles, and making the same so that, when chords are held in the middle and lower octaves, the upper notes can be heard, and regulate and tone the mechanical parts thereof so as to produce that effect." Also "regulate the reed stops in said organ, and make the same even in quality of tone." And: "(4) In order to render the key action less noisy throughout the entire keyboard and in particular in the middle octaves of the great organ, the party of the first part does likewise promise and agree that he will put small pieces of bushing cloth over the keys where they strike, and use his best efforts and endeavors to so modify, arrange, or adjust the said keys that they will not strike on the key frame when coming up after being depressed, and otherwise to properly adjust and correct any defects which may be found therein." Also to "revoice the pipes of the organ to such an extent as may be necessary by the increase of wind pressure, * * * thereby strengthening and increasing the tone of the organ, and enabling it to be heard in the music room to better effect, provided the said party of the first part is requested so to do by the party of the second part." Upon performance of this agreement the full purchase price was to be paid by the plaintiff. The plaintiff spent a few days in attempted compliance with this agreement. The organ failed to work as designed, and the defendant declined to pay. This action was commenced, a verdict recovered, which the court set aside on the ground that the plaintiff had failed to comply at all with provision 4 of the agreement requiring the plaintiff to "put small pieces of bushing cloth over the keys." The court held that the principle of substantial performance was not applicable, as the plaintiff made no endeavor whatever to fulfill the requirement referred to. The cost of putting in this bushing cloth would be only about $20, and the appellant claims this is too trivial a matter to justify setting aside so large a verdict, and also that the evidence warrants the inference that the putting in of the bushing cloth was unnecessary, and would not have proved to be beneficial.

Perhaps it may not be out of place to consider the case on broader lines. There are two propositions which all the organists seem to agree upon: (1) That the organ does not work satisfactorily. Its tones are low and muffled. They are harsh and rasping and unpleasant to listen to, and the full expression cannot be heard. (2) That these deficiencies are in the main to be attributed not to defects in the instrument itself, but to the confined space in which it is located. The large question in the controversy is, therefore, who is responsible for placing this valuable instrument in so restricted a place that its usefulness is impaired to so considerable a degree. The plaintiff has furnished, we may say, a valuable organ and well constructed. Is he to be chargeable with its failure to emit the music intended? The defendant, on the other hand, contracted for an expensive organ to furnish music for the various rooms and gallery in his large dwelling. He was not an expert. He relied upon the plaintiff, and has not been furnished with an organ commensurate with the purpose designed or the price to be paid. Is the failure to supply sufficient space imputable to him? To my mind this question is the controlling one in the case.

In the original memorandum, as already noted, the defendant agreed to prepare the place for the organ. This bare expression might indicate that he alone was to be responsible for the adequacy of the place for locating it. Mr. Albright was not an expert on organs. When he decided to provide an organ for his home, he consulted his architect and an organist, who was a performer on, not a builder of, organs. The architect testified that he was not familiar with the building or placing of organs or the space required for their proper operation. He prepared blueprints with accurate measurements of the room space and delivered them to the plaintiff. Correspondence ensued. The space was enlarged at the plaintiff's suggestion, who personally inspected it, and the evidence and letters of the architect tend to show that he left the matter of the sufficiency of the place to the plaintiff entirely. In brief, therefore, the defendant's claim is that the plaintiff was responsible for installing this organ in a location where it cannot be used effectively. While the defendant was to prepare the place, the size and adaptability of it were to be determined by the plaintiff, who alone knew what was required. As already suggested, this question is the important one, unless it has been waived or eliminated in some way. The position of the plaintiff is that by the second agreement the consideration of all defects not specified therein and also the question of the responsibility for the location of the organ have been taken out of the case. In the first place, the plaintiff was to overcome certain deficiencies, and it was expected, when that had been done, the organ would be satisfactory. The object was to strengthen the tones, eradicate "the weakness in the trebles," in order that its full play might be heard in the music room and adjacent rooms and gallery. If the object desired could not be attained by regulating the organ itself and the condition was due to lack of room, the responsibility for the latter condition remained, as originally, the chief question to be determined by the jury. In inter-

preting that agreement we must consider the situation of the parties. The plaintiff agreed to install a large organ which would work satisfactorily. He had signally failed to do so. There can be little disagreement over this statement. The defendant was willing to give the plaintiff the fullest opportunity to remedy the defects in order to make the organ suitable. He wanted the organ, and expected to pay therefor. The new agreement in the light of this situation and what the parties all along contemplated was for the purpose of having the organ so adjusted as to meet the expectation designed for it. We think, therefore, that the proposition of the appellant that the second agreement eliminated the consideration of all defects not recited in it is not so important. If the regulation of the stops, the placing of the bushing cloth, and the revoicing of the pipes did not produce the strength and quality of tones which was expected of the instrument, then the plaintiff failed to fulfill the real purpose of that agreement. The defective conditions were serious, and, when the second agreement was made, it was supposed they would be remedied. Certainly, if the principle contended for by the plaintiff is to prevail, that the mere adjustment of the keys and stops is all that he can be called upon to do, even though that regulation failed to remedy the existing condition, then he cannot complain if the agreement must be performed by him in every particular before he is entitled to recover the sum of $12,000. The court below has substantially adopted this principle; and, as the plaintiff omitted to put in the pieces of bushing cloth as provided in the agreement, a new trial was granted. The position is a logical and just one in view of the narrow interpretation the plaintiff has taken of the second agreement.

We think perhaps a somewhat broader view of the rights of the parties is desirable; and, if so, the major proposition is as to the responsibility for placing the organ in the contracted space, inasmuch as the defects are attributable to that condition. The controversy is one which the parties themselves should adjust, for the verdict of the jury may not aid in relieving the unfortunate situation.

The order should be affirmed, with costs to the respondent.

Order affirmed, with costs to the respondent. All concur. ROBSON, J., in result only.